# Ron Patrick & Nab- I AM , Pro-se

745 North Parish Pl
Burbank, Ca 91506-1702

310 -955-6541

(On behalf of )
Richard Weber
Department of Internal Revenue Service (IRS)
1111 Constitution  Av  NW
Room 2501
Washington  DC 20224

FILED
CLERK, U.S. DISTRICT COURT

MAR 2 4 2016

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF CALIFORNIA

### CV 16 - 0 2 0 4 1 - JFW (AGRx)

Ron Patrick & Nab- IAM, PRO-SE,
and (On behalf of  Department of Internal
Revenue Service, IRS and Department of
Justice (D.O.J)

**Plaintiffs**

vs.

COUNTY OF LOS ANGELES ,
SHERIFF'S DEPARTMENT, LEROY D.
BACA, ALTISOURCE, THE BANK OF
NEW YORK MELLON F/K/A THE
BANK OF NEW YORK , AS TRUSTEE
FOR THE HOLDERS OF THE GE-
WMC ASSET BACKED PASS-
THROUGH CERTIFICATES, SERIES
2005-1,  THE LAW OFFICES OF LES
ZIEVE, BRIAN H. TRAN, ESQ. #255577,
LESLIE M. KLOTT, ESQ. # 279622,

)Case No:

**CIVIL RIGHTS COMPLAINT
AND FRAUD (42 U.S.C
SECTION ~~1983, 1985~~ ul**

**COMPLAINT FOR:**
1. **ILLEGAL EVICTION**
2. **COMMON LAW FRAUD,**
3. **IRS FRAUD, AND**
4. **RACKETERING UNDER 18 U.S.C.
   1952.  DEMAND FOR JURY TRIAL
   AND PUNITIVE DAMAGES.**

**(AMOUNT DEMANDED; 12 MILLION
US DOLLARS )**

MAR 2 4 2016

Clerk, US District Court

1

1   **WMC MORTGAGE CORP,.**
2   **MORTGAGE ELECTRONIC**
    **REGISTRATION SYSTEMS, INC.,**
3   **(MERS), WESTERN PROGRESIVE,**
    **LLC, OCWEN LOAN SERVICING,LLC**
4   **and DOES 1 through 10 inclusive,**

5         **Defendants,**

6

7

8

9   Plaintiffs, Ron Patrick and Nab – I AM, (hereinafter "Plaintiffs") files this Complaint against

10  Defendants,  COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LEROY D. BACA,

11  ALTISOURCE, THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS

12  TRUSTEE FOR THE HOLDERS OF THE GE-WMC ASSSET BACKED PASS-THROUGH

13  CERTIFICATES, SERIES 2005-1, (REFERAL TO AS THE BANK OF NEW YORK MELLON),

14  THE LAW OFFICES OF LES ZIEVE, BRIAN H. TRAN, ESQ: 255577, LESLIE M. KLOTT,

15  ESQ:279622, WMC MORTGAGE CORP., MORTGAGE ELECTRONIC REGISTRATION

16  SYSTEMS, INC. (MERS), WESTERN PROGRESIVE, LLC   AND DOES 1 through 10 inclusive.

17

18                   BRIEF INTRODUCTION OF NATURE OF CASE

19

20        This is a Federal Proceeding and Civil Rights Violations brought by Ron Patrick and Nab- I

21  AM to recovery  property that was stolen from the Plaintiff(s) by all the above defendants conspiring

22  together, fabricating documents and recording them at the Los Angeles County Recorder's office and

23  illegally foreclosing on the property and The Los Angeles County Sheriff Department illegally

24  ejecting Plaintiffs from their domicile by the Powers and Authorities of Ex Los Angeles County

    Sheriff Leroy D. Baca who is no longer position of office.

25        This Proceeding is also to determine the validity of the documents signed, notarized, recorded

26  and mailed through the use of The United States Postal Service to commit mail fraud.

27        This Proceedings is also to determine if all the California Laws that govern foreclosure was

28  followed by the defendants.

This Proceeding is also to determine if the defendants followed all the IRS Laws, Rules, Regulations and Requirements governing SEC and GAP-General Accounting Principals.

Through research and investigation, it has come to light to the Plaintiff(s) that;

(1)     Defendant, Leroy D. Baca is no longer the Sheriff of the Los Angeles County Sheriff's Department.  That he has recently been indicted for concealing information.

(2)     Therefore, for Defendant, Los Angeles County Sheriff's Department to come and remove a family from their home, posting a notice in their window alleging that he eviction is under powers and authority of Defendant Sheriff D. Baca, is fraud and deceit.

(3)     Defendant, Altisource is an alleged management company, a third party debt collector who does not have firsthand knowledge of anything pertaining to the Plaintiff's loan transaction and has violated The Fair Debt Collection Practices Act.

(4)     Defendant, The Bank of New York Mellon, is an alleged lender; also a third party debt collector who has also violated The Federal Fair Debt Collection Practices Act . The alleged loan was assigned to the Defendant, The Bank of New York Mellon by Defendant, MERS who has no legal standing nor the capacity to do so. (See attached fraudulent Assignment of Deed of Trust recorded with the Los Angeles County recorder's office as instrument # 20091065278).

(5)     Defendant, The Law offices of Les Zieve is a law firm, also a third party debt collector who has also violated The Federal Fair Debt Collection Practices Act against the Plaintiffs.

(6)     Defendant,   Brian H. Tran, ESQ: # 255577 who is also a third party debt collector has also violated The federal Fair Debt Collection Practices Act against the Plaintiffs.

(7)     Defendant, Leslie M. Klott, ESQ: # 279622 who is also third party debt collector, has also violated The Federal Fair Debt Collection Practices Act against the Plaintiffs.

(8)     Defendant, WMC Mortgage Corp. was the alleged original lender who allegedly loaned the money to the Plaintiff. Through research, it has come to light that Defendant WMC Mortgage Corp. did not actually loan any of their money.  If so, then where did the money come from that was allegedly loaned the Plaintiffs ?

3

(9)     Defendant, Mortgage Electronic Registration Systems, Inc. (MERS) is an electronic system(s) set up to keep track mortgages and have no legal capacity to assign, convey nor transfer any loan(s) nor substitute trustee(s).

(10)    Defendant, Western Progressive, LLC is a foreclosure company, also a third party debt collector who was substituted in by Defendant MERS who has no legal capacity to do so. ( See fraudulent Substitution of Trustee filed at the Los Angeles County Recorder's Office as instrument # 20131599690.)

(11)    Since there seem to be a miracle of fraud in the orchestration of the original loan by WMC Mortgage Corp; in that, they did not invest a penny of their own money into the allege loan to the Plaintiff(s), then there is a question ?  Where did the alleged money come from ?

(12)    Therefore, part of this Proceeding is also to determine whether or not Defendant WMC Mortgage Corp., did indeed lend their own money to fund the said transaction?

(13)    And if they followed GAP- General Accounting Principals of Banks and Banking laws, SEC laws rules and regulations as well as IRS rules and regulations regarding all documents that are required of them to file with the IRS for their tax credits.

(14)    And how much money did Defendant The Bank of New York Mellon pay to defendant WMC Mortgage Corp for the property to be assigned to them ?

(15)    And how come the amount is not disclosed so they can pay taxes on it ?

Furthermore, this Proceeding is an action to obtain an injunction or other equitable relief from Foreclosure Fraud and Intrinsic and Extrinsic Fraud as well as to obtain a declaratory judgment, declaring defendants acts to be unlawful and fraud.  And for title to be recinded and punitive damages awarded to the Plaintiffs.


The relief sought includes but not limited to:

a)     Injunctive Relief, b) Treble Damages, C) Compensatory and Punitive Damages, for Fraud and Racketeering.

4

b)   Also, the imposing of a constructive trust with Tracing, Cost of Investigation, The Law Suit, Interest, Attorney Fees and for all other relief afforded under Law for deceptive practices and acts, Fraudulent Claims and Liens asserted against Plaintiff(s) property,

c)   Illegal Foreclosure and Transfer of Title.

d)   PLAINTIFF IS ENTITLED TO IMMEDIATE INJUNCTION RELIEF FROM THE ILLEGAL FORECLOSURE.

e)   PLAINTIFFS ARE REQUESTING THAT THIS FRAUDULENT SALE BE RECINDED.

## JURISDICTON AND VENUE

This court has jurisdiction over this case because the property in question which gave rise to this law suit is situated in Los Angeles County with address known as:

745 North Parish Pl.

Burbank, CA 91506 - 1702

Legally described as:  LOT(S) 48 OF TRACT NO. 11791, IN THE CITY OF BURBANK, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 214, PAGE(S) 7 TO 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 2448-021-024

## PARTIES AND RELATIONSHIPS

1.   Plaintiffs Ron Patrick and Nab- I AM at all times herein mentioned are and now are natural persons, residing in the County of Los Angeles, State of California, as The Real Parties of Interest (Owners and Equitable Interest Holders) of subject property of this lawsuit.

2.   , Defendant COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT at all times herein mentioned, is a California corporation organized under the laws of the State of California as law enforcement agency to enforce CODES in the county of Los Angeles. Said defendant is also a third party debt collector. Defendant address is: 300 EAST OLIVE AVENUE, SUITE 104, BURBANK, CA 91502.

3.   Defendant LEROY D. BACA at all times herein mentioned, was an Ex Sheriff for the Los Angeles County Sheriff Department. Not only is the said defendant oustead from the department, but he just got indicted for concealing information. Yet, the department is still using his name on documents to evict home owners from their home which is illegal. Defendants address is: 4700 RAMONA BLVD, MONTEREY PARK, CA 91754.

4.   Defendant ALTISOURCE at all times herein mentioned, is a corporation organized under the laws of the State of Georgia, doing business managing properties for lenders. Said defendant is currently hired to manage Plaintiffs subject property in question. Said defendant is also a third party debt collector. The address for the defendant is: 1000 ABERNATHY RD. SUITE 200, ATLANTA, GA 30328.

5.   Defendant THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE HOLDERS OF THE GE-WMC ASSET BACKED PASS-THROUGH CERTIFICATES, SERIES 2005-1 (THE BANK OF NEW YORK MELLON) is at all times herein mentioned, is a lender/securities holder doing business in State of California stealing "WE THE PEOPLE" properties one by one through its agents. Said defendant is also a third party debt collector. Defendants address is; c/o OCWEN LOAN SERVICING, LLC. 1661 WORTHINGTON ROAD. WEST PALM BEACH, FL 33409.

6.   Defendant OCWEN LOAN SERVING LLC, is at all times herein mentioned, is a third party

debt collector doing business in the State of California attempting to collect a debt for alleged lenders. Said defendants address is: 1661 WORTHINGTON ROAD, WEST PALM BEACH, FL, 33409.

7. Defendant, The Law office of Les Zieve is at all times herein mentioned is a law firm organized under the laws of the State of California doing business evicting home owners. Said defendant is also a third party debt collector. The address of said defendant is: 30 CORPORATE PARK, SUITE 450, IRVINE, CA 92606.

8. Defendant, Brian H. Tran, ESQ; 255577 is at all times herein mentioned, is an Esquire employed by Law office of Les Zieve doing business in the State of California as an Esquire. Said defendant is also a third party debt collector. The address to said defendant is: 30 CORPORATE PARK, SUITE 450, IRVINE CA 92606.

9. Defendant, Leslie M. Klott, ESQ; 279622 is at all times herein mentioned, is an Esquire employed by Law office of Les Zieve doing business in the State California as an Esquire. Said defendant is also a third party debt collector. The address to said defendant is: 30 CORPORATE PARK, SUITE 450, IRVINE, CA 92606.

10. Defendant, WMC Mortgage Corp. is at all times herein mentioned, was the alleged original lender, organized under the laws of the State of California doing business as a lender. Said defendant address is: P.O. BOX 54089, LOS ANGELES, CA 90054-0089.

11. Defendant, Mortgage Electronic Registration Systems (MERS) is at all times herein mentioned, a corporation doing business in the State of California under the laws of THE State of California. Said defendant is an electronic system set up to register / monitor mortgages loans. Said defendants address is P. O. BOX 2026, FLINT, MI 48501-2026.

12. Defendant, Western Progressive, LLC, is at all times herein mentioned, is a foreclosure

company organized under the laws of the State of doing business in the State of California. Said defendant is also a third party debt collector. The address fir said defendant is: 2002 SUMMIT BLVD, # 600, ATLANTA GA 30319.

13. Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein under the fictitious names DOES 1 through 10, inclusive, and Plaintiffs will amend the Complaint to allege such names and capacities as soon as they are ascertained. Plaintiffs are informed and believe and thereon allege that each of said fictitious named Defendants are responsible in some manner for the acts complained of herein.

## NATURE OF ACTION
### AND REQUEST BY JUDICIAL NOTICE FOR DEFENDANT TO PROVE A CLIAM.

14. This case arises out of fraud, intent to fraud, IRS Fraud, Extortion, and Mail and Wire Fraud and Civil Rights Violation by all the named defendants.

15. Plaintiffs Ron Patrick and Nab - I AM invested in subject property in July of 2005. Loan amount was $536,000.00. Interest rate was 7.5 per cent. Monthly payment was $4,300 per month. Plaintiffs paid that for 3 years to 4 years. Then it went up to $5,400.

16. Litton Loan Servicing, lP was the servicer at that time so Plaintiffs contacted them for some kind of modification work out plan to make the payment affordable.

17. Litton reduced the interest rate to 7 percent bringing the payment down to $4,470.00 per month.

18. Plaintiffs made 3 months payments of that amount and contacted Litton if they can reduce it a little to make it more affordable .

19. Litton placed the Plaintiffs on a 3 months loan modification trial out in the amount of $2,675 per month.

20. After the 3 months of successful payment, Litton alleges that, they never received a fax that they requested therefore the modification is canceled. Even though the fax was sent to them and they received it.

21. They will not accept any more payments from the Plaintiffs.

22. SO IT WASN'T THAT THE PLAINTIFFS DID NOT MAKE THEIR MORTGAGE PAYMENTS OR REFUSED TO MAKE THEIR PAYMENTS, THE SERVICER, LITTON WILL NOT TAKE IT. AND WE FELL THAT THIS IS WRONG AND IN VIOLATION OF THE CALIFORNIA FORECLOSURE LAWS. THEREFORE, WE WANT THE D.O.J TO LOOK INTO OUR COMPLAINT AND THE FRAUD THAT THESE SERVICERS AND THE BANKS ARE COMITING AGAINST HOME OWNERS EVERYDAY AND ILLEGALY FORECLOSING ON THEIR HOMES. WE WERE SOLD A BAD LOAN TO BEGIN WITH. (SEE ATTACHED ORIGINAL LOAN DOCUMENTS-DEED OF TRUST.)

23. While in negotiations, they assigned the servicing rights to OCWEN.

24. We started negotiating with Ocwen and they will not help us for nothing neither.

25. California foreclosure law requires a lender to try and help a home owner to explore all options to avoid foreclosure. But these servicers do not adhere to the law. They rather foreclose because they and the lenders benefit more by foreclosing than helping the home owners save their homes.

26. They started recording their fraudulent instruments in the Los Angeles County Recorder's Office to steal the property.

27. First, MERS assigned the subject property to defendant THE BANK OF NEW YORK MELLON. Amount, unknown because it says, " For Value Received". And this is how they hide behind the curtins and avoid paying taxes to the county recorder, the State and IRS. (See

Exhibit "A"--- Fraudulent Assignment recorded in the Los Angeles County recorder's office as instrument number 20091065276--- Dated 07/15/2009.  MERS does not have the legal standing to assign the mortgage instrument and the Note therefore, the assignment is fraudulent.

28. Next, THE BANK OF NEW YORK MELLON recorded a substitution of trustee naming defendant WESTERN PROGRESSIVE, LLC as the substitute trustee. (See Exhibit "B"--- Fraudulent recorded substitution of trustee in the Los Angeles County recorder's office as instrument # 20131599690.  Dated 11/12/13.

29. Next, a notice of default gets recorded by defendant WESTERN PROGRESSIVE, LLC.  In the last page of their notice of default # 2 reads, "The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code Section 2923.55(f) to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. "Thirty (30) days, or more,  have passed since these due diligence requirements were satisfied.  This statement is perjury because Plaintiffs have been calling and begging Ocwen for help to save their home and they refuse.  Therefore, the notice of default is fraud.  (See Exhibit "C"--- Fraudulent Notice of Default recorded at the Los Angeles County recorder's office as instrument # 20131772785.  Dated 12/17/13.

30. Next followed three (3) different recordings of Notices of Trustees Sales.  All in an  attempt to sell Plaintiffs property instead of working with Plaintiffs to save their home.  (See Exhibit "D"---Fraudulent Notice of Trustee's Sale recorded in the Los Angeles County recorders office as instrument numbers 20140643889, dated 6/20/14.  Then, instrument # 20141070071, dated 10/09/14.  Then the third one recorded was instrument # 20150540881, dated 05/11/15.

31. Finally, on June 30th, 2015, defendant WESTERN PROGRESIVE, LLC foreclosed on

Plaintiffs property and conveyed title to defendant THE BANK OF NEW YORK MELLON.(See Exhibit "E'---Fraudulent Trustee's Deed Upon Sale.

32. After they illegally foreclosed on Plaintiff's property, they file a law suit in unlawful detainer court and illegally removed Plaintiffs and their families in the street.  Under the powers authority of an Ex Los Angeles Sheriff –Leroy Baca who is no longer with the department. Another FRAUD, DECIET AND ILLEGAL EVICTION.

33. This is why President Thomas Jefferson said;

"I believe that the banking institutions are more dangerous to our Liberties than standing Armies.  If the American People ever allow Private Banks to control the issue of their currency, first by inflation, then  by deflation, the banks and the corporations that will grow up around [the banks] will deprive the people of all property until their children woke up homeless on the continent their fathers conquered.

The issuing Power should be taken from the banks and restore to the people to whom it properly belongs."

## COURT TO TAKE JUDICIAL NOTICE  OF PLAINTIFF'S AFFIDAVITE REQUEST FOR  DEFENDANT(S) TO PROVE A CLAIM,

## COUNT 1.   COMMON LAW FRAUD, IRS FRAD, EXTORTION, AND RACKETEERING

18. Plaintiffs are of the age of maturity to make this affidavit and the testimonial facts herein.

19. Plaintiffs are mentally competent to make this official Affidavite of TESTIMONIAL Facts for the Court Record.

20. Plaintiffs have personal knowledge of the facts in this testimony and affidavit.

21.Plaintiff's affidavit is made under penalties of perjury and must be responded to by

either counter testimony or counter affidavit with 21 days. The persons / defendants must make their official testimony under penalty of perjury . All parties/defendants must respond by testimony in writing to court within the required time by statue or this testimony and affidavit of facts will stand as undisputed fact as a matter of law.

22. Plaintiffs declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. [ Made Pursuant to Title 28 USCA Section 1746] Summary:

23. According to 12 USC(e) update RESPA Laws, you have 5 days to verify reception of the QWR and 21 days to respond to this Qualify Written Request and to provide the information Plaintiffs are requesting to the court and the Plaintiffs.

24. Plaintiffs also request that all Mortgage Insurance Policies; Names, Addresses, Policy numbers be made available to the Plaintiffs and the court for review. Because Plaintiffs believe that the Mortgage Insurance Policy placed on the loan by the Plaintiff to protect the lenders interest in case of default, had satisfy the debt. Therefore what the lender and their agents are doing is double dipping which is illegal.

(AND PLAINTIFFS WANT THE DEFENDANTS TO PROVE TO THE COURTS THAT THEY USED THEIR OWN MONEY TO FUND THE ALLEGED LOAN ON THE SUBJECT PROPERTY AND THEY POSSESS THE ALLEGED LIEN /NOTE.

25. INFORMATION REQUESTED FROM DEFENDANTS BY PLAINTIFFS:

26. Plaintiffs' list of things requested according to Federal Rules RESPA and New Amendments made under the Dodd-Frank Act of 2010 to RESPA:

    a.  Plaintiffs request for the name of the Current/Previous Legitimate True Original Creditor, INVESTOR and Trustee of the alleged Loan prior to Defendant THE

BANK OF NEW YORK MELLON., illegally foreclosing on Plaintiff's property.

b.   Plaintiffs request for the NAME(S) of the investor(s)/Trustee(s) and all NAMES if these are separate and or multiple entities.

c.   Plaintiffs request for the address of these entities.

d.   Plaintiffs request for an individual contact to these entities.

e.   Plaintiffs request for a Certified Copy of The Servicing Agreement from the Investor(s)/Trustee(s) as well as the Pooling and Servicing Agreement if this is a separate instrument.

f.   Plaintiff request for all account numbers associated with the Trust Relationship they serviced for the Owner(s), Investors and Originators of the alleged Loan.

g.   Plaintiffs request for a Certified copy of the Master Trust Agreement from the Investor/ Trustee(s) as well as The Pool Number along with, The Trust Agreement and any Issue Supplement(s).

h.   Plaintiffs request that if this is a separate instrument, then Plaintiffs would like all account numbers associated with the Trust relationship defendant(s) serviced for the Owner(s)/ Investors and originators of this alleged Loan.

i.   Plaintiffs request for all the wiring instructions for this account.

j.   Plaintiffs request a Certified Copy of the Proof that all defendants and all interested parties/entities has recorded interest in Los County in Plaintiffs property.

k.   Plaintiffs request for a Certified copy of all the defendants and all the interested parties and or entities' right to do business in the STATE OF CALIFORNIA,

COUNTY OF LOS ANGELES, CITY OF LOS ANGELES.

l. Plaintiffs request for the 1099-OID Forms which was filed with the Department of Treasury and Internal Revenue Service in respect to the Original Note and Mortgage and any of these forms filed by the defendant(s) as a servicer.

m. Plaintiffs request for any 1099-A Forms filed as well.

n. Plaintiffs request for any 1099-B forms filed in respect to the Original Note and Mortgage.

o. Plaintiffs request for any 1096 Form filed as well.

p. Plaintiffs request for any 1099-C Forms filed as well because all of these forms are suppose to be filed by the Servicer and the Originator and all affiliate(s) parties with the Department of Treasure and Internal Revenue Service as a means of tracking the parties that have interest in the alleged Loan.

q. Plaintiffs request for all 1099-C's from any affiliated RIMIC's (Real Estate Mortgage Investment Conduits) that defendant(s) have serviced in respect to this Mortgage and their 1099C forms if they are a RIMIC.

r. Plaintiffs request for the name of the originator of the original alleged Loan.

s. Plaintiff request for the address and contact number for this entity.

t. Since Plaintiffs never received Notice of a Transfer as required under the RESPA ACT, Plaintiffs would like all Notices of Transfer(s) and Assignments that allows for defendant(s) to act as the servicer.

u. Plaintiffs request for Proof of Service that defendant(s) noticed Plaintiffs of the/those assignment(s) and Proof of all attempts made as per their NOD declaration.

v. Plaintiffs request for the name(s) of any and all parties claiming/claimed interest in Plaintiffs property that defendant(s) represented as a servicer via any and all agreement(s) and securitization(s).

w. Plaintiffs would like the account numbers of those instruments and all the Names and all aliases of these entities who have alleged interest in Plaintiffs property who are represented by the defendant(s) as a servicer, along with the address and contact numbers.

x. Plaintiffs request for the "Original Note"; and to know who is the Holder- In-Due Course of the "Original Note" that gave rise to the Mortgage.

y. Plaintiffs request for the entity's address and individual contact to that entity.

z. Plaintiffs request that defendant(s) forward this affidavit to the Comptroller of Currency and Comptroller of General and HUD in order to provide an official Notice that Plaintiff have sent RESPA Request to the entities mentioned herein seeking truth about compliance of due diligence of said alleged loan that was illegally foreclosed on and now in litigation, for this court action and notify the Plaintiffs. Defendant(s) are to notify the court with certified proof of mailing. Plaintiffs intend to do similar:

aa. NOTE:  Plaintiffs are sending and requesting these qualified written request pursuant to the amendments to the RESPA ACT 12 USC 2605 as amended by the Dodd-Frank Act of 2010 as passed by the US Congress (11th) and pursuant to the powers of the Bureau of Consumer Financial Protection and the OCC both of which have jurisdiction over the above banking entities.  Because Plaintiffs feel that, this is the only way that the FRAUD that these

FRAUDSTARS commit everyday and illegally steel "WE THE PEOPLE" property, will come to light and be held accountable.

bb. PLAINTIFFS ARE REQUESTING FOR A RECEIPT OF PURCHASE.

cc. Furthermore, Plaintiffs purpose of requesting these qualified written request is to serve as an offer to cure any fraudulent and wrongful foreclosure action and constructive fraud(s) in regards to a promissory note and mortgage security interest lien initiated between the Plaintiffs and an unknown Creditor and Originator which is allegedly being or was serviced by defendants.

dd. Plaintiffs allege that defendants THE BANK OF NEW YORK MELLON AND WESTERN PROGRESSIVE, LLC actions was pre-meditated and FRAUD.

ee. COURT TO TAKE JUDICIAL NOTICE: NOTE:  Defendant WMC MORTGAGE CORP.  status to do business in the  State of California is /was suspended.

ff.   When Plaintiffs realized that the defendants were not cooperating, Plaintiffs requested defendant WESTERN PROGRESSIVE, LLC to validate the debt and served a Quality Written Request on the alleged servicer and lender and no responds were received from any one of the defendants.  They refused to tell us who the True and Original Creditor, Investor, Trustee, Owner and or Originator of this loan is despite several request via Qualified Written Responses.  There is a federal penalty of $2000 per violation including those who unlawfully reported the loan as delinquent to credit reporting agencies even though they knew Plaintiffs had provided quality responses.

gg. Plaintiffs ask the court to take a Judicial Notice to Plaintiffs RESPA and its

importance.  Because as an alleged Servicer to that unnamed entity via an

unidentified Service agreement, their right as a (FINANCIAL- SERVICER) to

foreclose is based on two (2) conditions:

   1)  That there exit a lawful Service Agreement and identifiable True Original

       Creditor, Investor, Trustee, Owner and Originator of an Actual Loan and

       that FINANCIAL-SERVICER is the lawfully Recorder Servicer via a

       service agreement of record.

   2)  That the entity (Alleged Investor, Trustee, Owners and Originators of the

       Loans) has a lawfully recorded interest at Los Angeles County recorder of

       Deeds in Plaintiffs property.

   3)  That any transfers and assignments are assignments of an Original

       Promissory Note and the Mortgage-Deed of Trust wholly and fully

       together; that the party is the Holder-In-Due Course pursuant to California

       State Law of those instruments and has an assignment stating that fact, and

       the instrument is of record.  Without such, any claims are void pursuant to

       Carpenter vs. Logan 83 U.S 271 (1872).

hh. Plaintiffs allege that if both of the above is not actual and in existence and

    provided via this RESPA requested, then any foreclosure is unlawful, fraudulent

    and moot.  Thus Plaintiffs are requesting via the update RESPA Laws the

    following pursuant to 12USC 2605 (e).

ii. Plaintiffs request is made in accordance with the RESPA ACT as amended by

    the Dodd-Frank Act of 2010.  Defendants are to receipt of the RESPA Qualified

    written request within 5 days in writing according to 12USC (e) 1 (A) and

provide all information within 21 days according to 12 USC 2605 e (c)i.

jj.   PLAINTIFFS REQUEST FOR THE ORIGINAL RECEIPT OF PURCHASE.

kk. Plaintiffs declare under penalty of perjury under the laws of the United States of

America that the forgoing is true and correct.


_____

Ron Patrick

[Made pursuant to Title 28 USCA Section 1746]


_____

Nab- I AM

[Made pursuant to Title 28 USCA Section 1746]


(See attached acknowledgment)


PRAYER

Plaintiffs request that the defendants respond to Plaintiffs affidavit Point by Point in writing

with the court within 21 days to determine if defendants had legal standing to foreclose.

If the defendants had no legal standing to foreclose, then Plaintiff request that the sale be set

1  aside, and for them to re arrange the to where the Plaintiffs can afford because the loan was bad from

2  start.

3

4

5

## DEMAND FOR JURY TRIAL

6       Plaintiffs demand trial by jury of all matters.

7  DATED this 24th Day of March, 2016

8            Respectfully submitted,

9

10                                    Ron Patrick, In Pro Se

11

12

13                                    Nab I AM, In Pro Se

14

15

16

17

18

19

20

21

22

23

## AFFIDAVITE VERIFICATION

24

25      We, Ron Patrick and Nab I AM, are the Plaintiffs in the above-entitled action.  We have read

26  the foregoing complaint and know the contents thereof.  The same is true of our own knowledge,

27

28

1  except as to those matters which are therein alleged on information and belief, and as to those

2  matters, we believe it to be true.

3      We, declare under penalty of perjury, under the laws of the State of California, that the

4  

5  foregoing true and correct and that this declaration was executed in the County of Los Angeles, City

6  of Los Angeles, State of California.

7  

8  Dated: March 24, 2016

9  

10  

11  Ron Patrick,  Plaintiff Pro-se

12  

13  

14  Nan I AM, Plaintiff Pro-se

15  

16  A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

17  

18  

19  State of California, County of Los Angeles

20  Subscribed and sworn to (or affirmed) before me on this 24 day of MARCH 2016 by

21  RONALD PATRICK & NANA IAM

22  proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

23  Signature _____ (seal)

CARRIE T. FELICITAS
Commission No. 2074367
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires AUGUST 9, 2016
NCC1   NCC1

24  

25  

26  

27  

28



EXHIBIT

FRAUDULENT EVICTION

Leroy D. Baca is no longer the Sheriff and can not order nor authorize any eviction in Los Angeles County. HE HAS NO JURISDICTION

# NOTICE OF EVICTION

### TO THE JUDGMENT DEBTOR(S)
### AND ALL CLAIMING UNDER SAME:

You are hereby notified that pursuant to the Order of Court and Notice to Vacate heretofore delivered to you or your agent, or posted upon these premises, your occupancy of these premises has been terminated. Any property which you may have left upon the premises is now under the legal control of the judgment creditor referred to below.

Information regarding legal procedures to follow to regain possession of  your personal property is set forth in the above-mentioned Notice to Vacate. For further information you should consult an attorney.

## ATTENTION

"Every person who has been removed from any lands by process of law, or who has been removed from any lands pursuant to the lawful adjudication or direction of any court, tribunal, or officer, and who afterwards unlawfully returns to settle, reside upon, or take possession of such lands, is *guilty of a misdemeanor*." (PC419.)

CASE NO *1 5 0 6 3 0 4*

*BANK OF NEW YORK*
_____
**Judgment Creditor**

vs.

*PATRICK*
_____
**Judgment Debtor**

*3/17/16*
_____
**Date**                          **Deputy**

**Leroy D. Baca, Sheriff**
**Los Angeles County**

SH-CL240  Rev 1/09



Altisource®

## 15 DAY NOTICE OF RIGHT TO RECLAIM ABANDONED PERSONAL PROPERTY

**Date:** 3/17/16

**To:** 4/1/16

Ron Patrick

(Name of former Occupant)

**Address:**

745 North Parish Pl Burbank CA 91506

(Address of former Occupant)

When you vacated the premises at:

745 North Parish Pl Burbank CA 91506

(Address of premises, including room or apartment number, if any)

some personal property remained (please see Exhibit A)

Unless you notify us no later than 15 days after the date of this notice that the personal property has not been abandoned and of your intent to claim it, and unless you pay the reasonable costs of storage, if any, we will dispose of this property in accordance with state law.

You may claim this property at

562 - 697 - 9988    EEC Corp

Ext. 110

(Address where property may be claimed)

Altisource is a service provider for the new owner of this property.

## Thinking Ahead. Delivering Today.®

P.O. Box 105460 | Atlanta, Georgia 30348-5460



This page is part of your document - DO NOT DISCARD

05 1775367

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
**07/27/05 AT 08:00am**

TITLE(S) :



L E A D    S H E E T

FEE

FEE $55.RR
DAF $
C-20

D.T.T.

NOTIFICATION SENT $4

CODE
20

CODE
19

CODE
9

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.          Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

7/27/05

**LAWYERS TITLE**

2

RECORDING REQUESTED BY /
RETURN TO:
WMC MORTGAGE CORP.

1 RAMLAND ROAD

ORANGEBURG, NY 10962

Attn: ATTN: POST CLOSING
RECORDED DO

**05 1775367**

2367812-48
Prepared By:
KAY DOMM

WMC MORTGAGE CORP.

6320 CANOGA AVENUE 10TH FL
(MAILROOM)

WOODLAND HILLS, CA 91367

---

[Space Above This Line For Recording Data]

SERV #: 11264340
DEFINITIONS

**DEED OF TRUST**

PATRICK
Loan #: 11264340
MIN: 100136300112643407
PIN:

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    July 19, 2005    together with all Riders to this document.

(B) "Borrower" is RON PATRICK, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.

(C) "Lender" is   WMC MORTGAGE CORP.

Lender is a Corporation
CALIFORNIA
CA 90054-0089

. Lender's address is

organized and existing under the laws of
P.O. BOX 54089 LOS ANGELES,

(D) "Trustee" is   WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888)679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   July 19, 2005
The Note states that Borrower owes Lender
Five Hundred Thirty-Six Thousand And 00/100
Dollars (U.S. $ 536,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   August 1, 2035

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005 1/01
DOCUKCA1                     (Page 1 of 13)
DOCUKCA1.VTX 09/15/2004

7/27/05

3

11264340                                                          11264340

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider   [ ] Condominium Rider            [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider [ ] Biweekly Payment Rider
[ ] 1-4 Family Rider        [ ] Other(s) [specify]

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                          of   LOS ANGELES

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AND KNOWN AS EXHIBIT 'A'.

05  1775367

7/27/05

11264340                                                    11264340

which currently has the address of   745 NORTH PARISH PLACE
                                                    [Street]
BURBANK                                   , California   91506          ("Property Address"):
                      [City]                       [State]      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from

05  1775367

7/27/05

11264340                                                   11264340

Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01
DOCUKCA4                                              *(Page 4 of 13)*
DOCUKCA4 .VTX 09/15/2004

05  1775367

7/27/05

11264340                                                          11264340

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01
DOCUKCA5                                            (Page 5 of 13)
DOCUKCA5.VTX 09/15/2004

05 1775367

11264340                                      11264340

Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01
DOCUKCA6                                                 (Page 6 of 13)
DOCUKCA6.VTX  09/15/2004

7/27/05

11264340                                                    11264340

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender. If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such

05 1775367

11264340                                                    11264340

Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
DOCUKCA8          (Page 8 of 13)
DOCUKCA8.VTX 09/15/2004

05 1775367

11264340                                          11264340

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

*CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT*                              **Form 3005 1/01**
DOCUKCA9
DOCUKCA9.VTX 09/15/2004                              *(Page 9 of 13)*

05 1775367

7/27/05

11264340                                          11264340

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law,

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01
DOCUKCA10                                          *(Page 10 of 13)*
DOCUKCAA.VTX 09/15/2004

05 1775367

7/27/05

11264340                                                   11264340

(b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3005 1/01
DOCUKCA11                                    *(Page 11 of 13)*
DOCUKCAB.VTX 09/15/2004

05  1775367

7/27/05

11264340                                                                  11264340

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____   7-19-05
- Borrower -  RON M. PATRICK  - Date -

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
DOCUKCA12
DOCUKCAC.VTX 09/15/2004                              (Page 12 of 13)

Form 3005 1/01

05 1775367

7/27/05

14

11264340

11264340

[Space Below This Line for Acknowledgment]

State of California
County of Los Angeles

On July 19th, 2005                    , before me, Dalia Aboulwafa
personally appeared

Ron M. Patrick

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s), whose
name(s)      is           subscribed to the within instrument and acknowledged to me that      he
executed the same in  his      authorized capacity(ies), and that by  his          signature(s)  on  the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public

My Commission Expires: March 3, 2009

DALIA ABOULWAFA
COMM. #1556476
Notary Public - California
Los Angeles County
My Comm. Expires Mar. 3, 2009

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
DOCUKCA13
DOCUKCAD.VTX 09/15/2004
(Page 13 of 13)

Form 3005 1/01

05 1775367

7/27/05

15

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot(s) 48 of Tract No. 11791, in the City of Burbank, County of Los Angeles, State of California, as per Map recorded in Book 214, Page(s) 7 to 8 of Maps, in the Office of the County Recorder of said County.

05   1775367
legal rev. (010698)

7/27/05

16

# ADJUSTABLE RATE RIDER
### (LIBOR Index – Rate Caps)

PATRICK
Loan #: 11264340
MIN:   100136300112643407

Serv #: 11264340

*THIS ADJUSTABLE RATE RIDER is made this* 19th      day of  July,  2005
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to  WMC MORTGAGE CORP.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
745 NORTH PARISH PLACE, BURBANK, CA 91506

[Property Address]

> THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

> DURING THE FIRST Five                    ( 5   ) YEARS, INTEREST ONLY PAYMENTS WILL BE REQUIRED TO BE MADE.  THIS MEANS THAT THE REGULAR MONTHLY PAYMENT WILL NOT REDUCE THE AMOUNT I OWE DURING THE FIRST Five                    ( 5   ) YEARS OF MY LOAN.
> YOUR INTEREST RATE MAY CHANGE DURING THE 'INTEREST ONLY PERIOD' EVERY 6 MONTHS BEGINNING AFTER THE FIRST CHANGE DATE AS DESCRIBED IN SECTION 4 OF THE NOTE.

*ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:*

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of  5.990      %. The Note provides for changes in the interest rate and the monthly payments, as follows:

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
#### (A) Change Dates
The interest rate I will pay may change on the first day of  August,  2007           and on that day every  6th       month thereafter. Each date on which my interest rate could change is called a "Change Date."

DOCUNSG1
DOCUNSG1  VTX 07/09/2004

*(page 1 of 3 pages)*

05 1775367

7/27/05

11264340

11264340

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and Seven-Eighths** percentage point(s) ( 5.875 %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the first **Five** ( 5 ) years after loan closing ("interest-only period"), the Note Holder will determine the amount of the monthly payment that would be sufficient to pay accrued interest only on the unpaid principal balance. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the "interest-only period" unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the "interest-only period," my payment amount for subsequent payments during the "interest-only period" will be reduced to the amount necessary to pay interest at the then current interest rate on the remaining unpaid principal balance.

At the end of the "interest-only period" and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I will owe at that Change Date in substantially equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the "interest-only period," my payment amount will not be adjusted due to voluntary principal payments until the next Change Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.990** % or less than **5.990** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **12.490** % or less than **5.990** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred)

05 1775367

7/27/05

/8

11264340                                                    11264340

without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ Ron M Patrick _____  7-19-05
- Borrower - RON M. PATRICK - Date -

DOCUNS01
DOCUNS01.VTX  07/09/2004          (page 3 of 3 pages)

05  1775367

This page is part of your document - DO NOT DISCARD

**05 1775368**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
07/27/05 AT 08:00am**

## TITLE(S) :



L E A D    S H E E T

**FEE**

FEE $5~~4~~ RR
DAF $6.—
C-20    12  3T

**D.T.T.**



**CODE
20**

**CODE
19**

**CODE
9____**

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.     **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

7/27/05

# LAWYERS TITLE

RECORDING REQUESTED BY/
RETURN TO:
WMC MORTGAGE CORP.

1 RAMLAND ROAD

ORANGEBURG, NY 10962

Attn: ATTN: POST CLOSING
RECORDED DO

05  1775368

*236781-2-08*

Prepared By:
KAY DOMM
WMC MORTGAGE CORP.

6320 CANOGA AVENUE 10TH FL
(MAILROOM)
WOODLAND HILLS, CA 91367

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST AND REQUEST FOR NOTICE OF DEFAULT

Servicing #: 11264342

PATRICK
Loan #: 11264342
PIN:
MIN:   100136300112643423

THIS DEED OF TRUST is made this **19th** day of **July, 2005**
among the Trustor, **RON PATRICK, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY**

(herein "Borrower"), **WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION**

(herein "Trustee"), and the Beneficiary, MERS.
MERS is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, td. (888) 679-MERS.
**WMC MORTGAGE CORP.**

is a corporation organized and existing under the laws of **CALIFORNIA**
whose address is   **P.O. BOX 54089, LOS ANGELES, CA 90054-0089**

(herein "Lender").
BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably
grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
**LOS ANGELES**                              , State of California:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AND KNOWN AS EXHIBIT
'A'.**

This Deed of trust
is Second & Subject to
a first Deed of trust
Recording concurrently
herewith.

which has the address of   **745 NORTH PARISH PLACE**
                                             *[Street]*
**BURBANK**                          *[City]*
California **91506**                (herein "Property Address");
           *[Zip Code]*

CALIFORNIA – Second Mortgage – 1/80 – FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS
DOCU7CA1                              Page 1 of 9                              Form 3805
WMCD7CA1.VTX   11/05/2004

7/27/05

05 1775368

3

11264342                                                                 11264342

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, releasing and canceling this Security Instrument.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated July 19, 2005        and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $    134,000.00    , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on  August 1, 2020           ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record.  Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.**  Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.**  Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof.  Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution).  Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents.  Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge.  Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made.  The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds.  If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

7/27/05

11264342                                                    11264342

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments, and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

05  1775368

7/27/05

11264342

11264342

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has a priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

CALIFORNIA -- Second Mortgage -- 1/80 -- FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS
DOCU7CA4
WMCD7CA4 .VTX   11/05/2004                      Page 4 of 9

Form 3805

05 1775368

7/27/05

11264342                                               11264342

·16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

· 17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender, prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but no limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue

CALIFORNIA – Second Mortgage – 1/80 – FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

DOCU7CA5                                    Page 5 of 9
WMCD7CA5.VTX   11/05/2004

Form 3805

05 1775368

7/27/05

11264342                                                    11264342

unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19.    **Assignment of Rents; Appointment of Receiver; Lender in Possession.**    As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20.    **Reconveyance.**    Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21.    **Substitute Trustee.**    Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. The procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

22.    **Request for Notices.**    Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

23.    **Statement of Obligation Fee.**    Lender may collect a fee not to exceed the maximum amount permitted by applicable law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

REFERENCE IS HEREBY MADE TO THE RIDER(S) ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES:

☐ Adjustable Rate Rider       ☐ Condominium Rider               ☐ Second Home Rider
☐ Balloon Rider               ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider
☐ 1-4 Family Rider            ☒ Other(s) [specify] Balloon Rider

05 1775368

7/27/05

11264342                                                          11264342

## REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

    Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

    In accordance with Section 292b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded <u>Concurrently Herewith</u>, in Book <u>N/A</u>, Page <u>N/A</u>, records of <u>LOS ANGELES</u> County, (or filed for record with recorder's serial number <u>Concurrently Herewith</u> <u>LOS ANGELES</u>, County,) California, executed by RON PATRICK, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY

as trustor (or mortgagor) in which WMC MORTGAGE CORP.

is named

as beneficiary (or mortgagee) and WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION

as trustee be

mailed to WMC MORTGAGE CORP.

at   P.O. BOX 54089
     LOS ANGELES, CA 90054-0089

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

CALIFORNIA – Second Mortgage – 1/80 – FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS       Form 3805
DOCU7CA7
WMCD7CA7.VTX   11/05/2004    Page 7 of 9

05 1775368

7/27/05

9

11264342

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

11264342

_Ron m Patrick_        7-19-05

- Borrower - RON M. PATRICK - Date -

05  1775368

7/27/05

10

11264342                                                    11264342

STATE OF California
COUNTY OF Los Angeles

On July 19th, 2005 before me, Dalia Aboulwafa
personally appeared

Ron M. Patrick

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose names(s)
is  subscribed to the within instrument and acknowledged to me that he  executed the same in his
authorized capacity(ies), and that by his signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

My Commission Expires: March 3, 2009

DALIA ABOULWAFA
COMM. #1556476
Notary Public · California
Los Angeles County
My Comm. Expires Mar. 3, 2009

05 1775368

7/27/05

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot(s) 48 of Tract No. 11791, in the City of Burbank, County of Los Angeles, State of California, as per Map recorded in Book 214, Page(s) 7 to 8 of Maps, in the Office of the County Recorder of said County.

**EXHIBIT "A"**

05  1775368

legal rev. (010698)

7/27/05

*12*

[Space Above This Line For Recording Data

## BALLOON RIDER

Serv #: 11264342

PATRICK
Loan #: 11264342
MIN:   100136300112643423

THIS BALLOON RIDER is made this **19th** day of **July, 2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to **WMC MORTGAGE CORP.**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at: **745 NORTH PARISH PLACE BURBANK, CA 91506**

[Property Address]

The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date". I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder".

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

BALLOON RIDER-MULTISTATE (01/97)
DOCUBRH1
DOCUBRH.VTX  07/23/2004

Page 1 of 2

05 1775368

7/27/05

13

11264342                                                                    11264342
BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

Ron M. Patrick                    7-19-05
- Borrower - RON M. PATRICK - Date -

**BALLOON RIDER-MULTISTATE (01/97)**
DOCUBRH2
DOCUBRH2.VTX  07/23/2004                         Page 2 of 2

05 1775368



This page is part of your document - DO NOT DISCARD



# 20091065278



**Pages:
0002**

Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California

**07/15/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 12.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 12.00 |



**L E A D S H E E T**



**200907150250007**

**00000867703**



**002207025**

**SEQ:
16**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

**T35**

Requested and Prepared by:
The Wolf Firm

When Recorded Mail To:
LITTON LOAN SERVICING LP
4828 LOOP CENTRAL DRIVE
HOUSTON, TX 77081-2226
APN: 2448-021-024
0902-19819

07/15/2009

*20091065278*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Loan No.: **14542302**                    TS No: 09-11351-11

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Holders of the
GE-WMC Asset-Backed Pass-Through Certificates, Series 2005-1

    all beneficial interest under that certain Deed of Trust dated: **7/19/2005** executed by **RON
PATRICK, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY**, as
Trustor(s), to **WESTWOOD ASSOCIATES, A CALIFORNIA CORPORATION**, as Trustee,
and recorded as Instrument No. 05-1775367, on 7/27/2005, in Book , Page **and rerecorded on -
-- as ---, The subject Deed of Trust was modified by Loan Modification recorded as Instrument
20081142850 and recorded on 06/26/2008.** of Official Records, in the office of the County Recorder
of **Los Angeles** County, **California** together with the Promissory Note secured by said Deed of
Trust and also all rights accrued or to accrue under said Deed of Trust.

Date:
5/5/09

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR WMC
MORTGAGE CORP., A CALIFORNIA
CORPORATION

State of TX              } SS
County of  Harris        }

Marti Noriega        Assistant Vice President

On 5/5/09 before me,  **Brenda McKinzy**                    Notary Public, personally appeared
    Marti Noriega                    personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

Signature _____(Seal)

BRENDA MCKINZY
Notary Public, State of Texas
My Commission Expires
December 05, 2010

16F



EXHIBIT

FRAUDULENT SUBSTITUTION OF TRUSTEE



This page is part of your document - DO NOT DISCARD

## 20131599690





Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/12/13 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201311122890010

**00008537049**



005884565

SEQ:
01

ERDS - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E12

RECORDING REQUESTED BY:
Premium Title of California

AND WHEN RECORDED MAIL TO:
Western Progressive, LLC
2002 Summit Blvd, Suite 600
Atlanta, GA 30319

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: 2013-03028-CA                 55709247374844

## SUBSTITUTION OF TRUSTEE

**WHEREAS, Ron Patrick, A Married Man As His Sole And Separate Property** was the original Trustor, **Westwood Associates, A California Corporation** was the original Trustee, and WMC Mortgage Corp., A Corporation, as Lender, Mortgage Electronic Registration Systems, INC., As Beneficiary was the original Beneficiary under that certain Deed of Trust dated **07/19/2005** and recorded on 07/27/2005 as Instrument No. 05 1775367, in book ---, page --- of Official Records of **Los Angeles** County, California, and

**WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE,** the undersigned hereby substitutes **Western Progressive, LLC, 2002 Summit Blvd, Suite 600 Atlanta, GA 30319** as Trustee under said Deed of Trust.

TS No.: 2013-03028-CA          55709247374844

    Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 10/25/13

The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Holders of the GE-WMC Asset-Backed Pass-Through Certificates, Series 2005-1, By Ocwen Loan Servicing, LLC its attorney in fact

_____

Franci Boothney        Contract Management Coordinator

STATE OF FLORIDA

COUNTY OF PALM BEACH

    The foregoing instrument was acknowledged and sworn before me _____ Jami Dorobiala _____ this 21 day of October, 2013, by Franci Boothney _____ as a _____ AT _____ of Ocwen Loan Servicing, LLC, who is personally known to me or who has produced _____ as identification.

My Commission Expires: _____

Notary Public State of Florida
Jami Dorobiala
My Commission FF 008181
Expires 04/16/2017

Notary Public - State of Florida

Jami Dorobiala

EXHIBIT

FRAUDULENT NOTICE

OF DEFAULT



**This page is part of your document - DO NOT DISCARD**



# 20131772785



**Pages:
0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/17/13 AT 08:00AM**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 31.00 |



**L E A D S H E E T**



201312170140017

00008663704



005942036

**SEQ:
01**

ERDS - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E12

E534013

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Western Progressive, LLC

2002 Summit Blvd, Suite 600

Atlanta, GA 30319

---

Loan No.: 7092473748

TS No. 2013-03028-CA
APN No.:2448-021-024

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM TẮT VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE
### IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you
may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **293,937.16** as of 12/12/2013 ,and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Loan No.: 7092473748                              TS No. 2013-03028-CA

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing

prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

**Ocwen Loan Servicing, LLC The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Holders of the GE-WMC Asset-Backed Pass-Through Certificates, Series 2005-1 By Ocwen Loan Servicing, LLC, its attorney in-fact**
C/O Western Progressive, LLC

18377 Beach Blvd., Suite 210

Huntington Beach, California 92648

Beneficiary Phone: 877-596-8580

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. **Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

NOTICE IS HEREBY GIVEN: That Western Progressive, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 07/19/2005, executed by, **Ron Patrick, A Married Man As His Sole And Separate Property** , as Trustor, to secure certain obligations in favor of WMC Mortgage Corp., A Corporation, as Lender, Mortgage Electronic Registration Systems, INC., As Beneficiary., recorded 07/27/2005 , as Instrument No. 05 1775367 , in Book ---, Page --- , of Official Records in the Office of the Recorder of Los Angeles County, **California** describing land therein as: **As more particularly described on said Deed of Trust.**

Loan No.: 7092473748                                    TS No. 2013-03028-CA

The subject obligation includes **ONE NOTE(S) FOR THE ORIGINAL** sum of 536,000.00. A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

**Installment of Principal and Interest plus impounds and/or advances which became due on 02/01/2009 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

**You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.**

**Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.**

**Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

WE ARE ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THE PURPOSE BY EITHER OURSELVES OR THE BENEFICIARY, WHETHER RECEIVED ORALLY OR IN WRITING. YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF WITHIN THIRTY (30) DAYS. THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF. SHOULD YOU NOT DO
SO, THE DEBT WILL BE CONSIDERED VALID. IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

**2.The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence requirements were satisfied.**

**Dated: December 12, 2013**

Western Progressive, LLC, as agent for beneficiary

_____
(Porsche Smiley, Trustee Sale Assistant )



EXHIBIT

FRAUDULENT

NOTICES

OF

TRUSTEES

SALES

#1

This page is part of your document - DO NOT DISCARD



## 20140643889



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/20/14 AT 03:04PM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**L E A D S H E E T**



201406200980019

**00009312744**



006252625

**SEQ:**
**01**

ERDS - Daily



**THIS FORM IS NOT TO BE DUPLICATED**

E12

E186158

RECORDING REQUESTED BY
Western Progressive, LLC

AND WHEN RECORDED MAIL TO:
Western Progressive, LLC
2002 Summit Blvd, Suite 600
Atlanta, GA 30319

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: 2013-03028-CA        Loan No.: 7092473748

# NOTICE OF TRUSTEE'S SALE

### PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 07/19/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: Ron Patrick, A Married Man As His Sole And Separate Property
Duly Appointed Trustee: Western Progressive, LLC
Recorded 07/27/2005 as Instrument No. 05 1775367 in book ---, page--- and of Official Records in the office of the Recorder of Los Angeles County, California,
Date of Sale: 07/22/2014 at 11:00 AM
Place of Sale:        BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC CENTER PLAZA,
                     Pomona, CA 91766

Estimated amount of unpaid balance and other charges: $530,981.25

Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt

Street Address or other common designation of real property: 743 North Parish Place, Burbank, CA 91506
A.P.N.: 2448-021-024

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on this property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (866) 960-8299 or visit this Internet Web site http://altisource.com/resware/TrusteeServicesSearch.aspx using the file number assigned to this case 2013-03028-CA. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: June 19, 2014                    Western Progressive, LLC., LLC., as Trustee
                                        c/o 30 Corporate Park, Suite 450
                                        Irvine, CA 92606
                                        Automated Sale Information Line: (866) 960-8299
                                        http://altisource.com/resware/TrusteeServicesSearch.aspx

                                        For Non-Automated Sale Information, call: (866) 240-3530

                                        Tamika J. Smith, Trustee Sale Assistant

THIS FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE



EXHIBIT

FRAUDULENT NOTICE OF TRUSTEE SALE #2

**This page is part of your document - DO NOT DISCARD**



# 20141070071



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**10/09/14 AT 12:24PM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**L E A D S H E E T**



201410091010045

00009700005



006429562

**SEQ:**
**01**

ERDS - Daily



**THIS FORM IS NOT TO BE DUPLICATED**

E12

E491023

RECORDING REQUESTED BY
Western Progressive, LLC

AND WHEN RECORDED MAIL TO:
Western Progressive, LLC
2002 Summit Blvd, Suite 600
Atlanta, GA 30319

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: 2013-03028-CA     Loan No.: 7092473748     A.P.N.:2448-021-024

# NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**IMPORTANT NOTICE TO PROPERTY OWNER:**
YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 07/19/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Trustor: **Ron Patrick, A Married Man, As His Sole And Separate Property**
Duly Appointed Trustee: **Western Progressive, LLC**
Recorded 07/27/2005 as Instrument No. **05 1775367** in book ---, page--- and of Official Records in the office of the Recorder of **Los Angeles** County, California,
Date of Sale: **11/03/2014** at **11:00 AM**
Place of Sale:      **BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC CENTER PLAZA, POMONA, CA**

Estimated amount of unpaid balance and other charges: **$826,520.09**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, A SAVINGS ASSOCIATION OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

All right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described as

Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt

TS:2013-03028-CA

More fully described in said Deed of Trust

Street Address or other common designation of real property: 745 North Parish Place, Burbank, CA 91506
A.P.N.: 2448-021-024

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.

The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: $826,520.09.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary of the Deed of Trust has executed and delivered to the undersigned a written request to commence foreclosure, and the undersigned caused a Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on this property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (866)-960-8299 or visit this Internet Web site http://www.altisource.com/MortgageServices/DefaultManagement/TrusteeServices.aspx using the file number assigned to this case 2013-03028-CA. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale

Date: October 2, 2014                     Western Progressive, LLC, as Trustee
                                          C/o 30 Corporate Park, Suite 450
                                          Irvine, CA 92606
                                          Automated Sale Information Line: (866) 960-8299
                                          http://www.altisource.com/MortgageServices/DefaultManagement/Trus
                                          teeServices.aspx

                                          For Non-Automated Sale Information, call: (866) 240-3530

                                          Tamika A. Smith, Trustee Sale Assistant

**THIS FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**

TS:2013-03028-CA



EXHIBIT

FRAUDULENT

NOTICE OF TRUSTEES

SALE #3

**This page is part of your document - DO NOT DISCARD**



## 20150540881



**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/11/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 31.00 |



**L E A D S H E E T**



201505113330005

00010546932



006817369

**SEQ:**
**01**

ERDS - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E526311

TSG1309-CA-73‑1586_b307t

RECORDING REQUESTED BY
Western Progressive, LLC

AND WHEN RECORDED MAIL TO:
Western Progressive, LLC
Northpark Town Center
1000 Abernathy Rd NE; Bldg 400, Suite 200
Atlanta, GA 30328

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: 2013-03028-CA     Loan No.: 7092473748     A.P.N.:2448-021-024

## NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 07/19/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Trustor: **Ron Patrick, A Married Man, As His Sole And Separate Property**
Duly Appointed Trustee: **Western Progressive, LLC**
Recorded 07/27/2005 as Instrument No. 05 1775367 in book ---, page--- and of Official Records in the office of the Recorder of Los Angeles County, California,
Date of Sale: 06/10/2015 at 11:00 AM
Place of Sale:     BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC CENTER PLAZA, POMONA, CA

Estimated amount of unpaid balance and other charges: $863,269.08

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, A SAVINGS ASSOCIATION OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

All right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described as:

Street Address or other common designation of real property: 745 North Parish Place, Burbank, CA 91506
A.P.N.: 2448-021-024

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.

The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: $863,269.08.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary of the Deed of Trust has executed and delivered to the undersigned a written request to commence foreclosure, and the undersigned caused a Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on this property.

Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt

Please be informed the document is continued in Page 3

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (866)-960-8299 or visit this Internet Web site http://www.altisource.com/MortgageServices/DefaultManagement/TrusteeServices.aspx using the file number assigned to this case 2013-03028-CA. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale

Date: May 05,2015

Western Progressive, LLC , as Trustee
C/o 30 Corporate Park, Suite 450
Irvine, CA 92606
Automated Sale Information Line: (866) 960-8299
http://www.altisource.com/MortgageServices/DefaultManagement/TrusteeServices.aspx

For Non-Automated Sale Information call: (866) 240-3530

Camisha Scott, Trustee Sales Assistant

**THIS FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**



EXHIBIT

Fraudulent Deed upon

Trustee's

Sale

**This page is part of your document - DO NOT DISCARD**



## 20150966814



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**08/07/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**



201508070110042

00010970111



007007809

**SEQ:**
**01**

ERDS - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E248971

TSG1309-CA-751506_3444e

TS No.: 2013-03028-CA

RECORDING REQUESTED BY:
**Western Progressive Trustee, LLC**

AND WHEN RECORDED TO:
**The Bank of New York Mellon f/k/a The Bank
of New York, as Trustee for the Holders of the
GE-WMC Asset-Backed Pass-Through
Certificates, Series 2005-1
C/o Ocwen Loan Servicing, LLC
1661 Worthington Road
West Palm Beach, FL 33409**

**Forward Tax Statements to
the address given above**

---

SPACE ABOVE LINE FOR RECORDER'S USE

**TS No.: 2013-03028-CA**          **Order No.: 1309-CA-791586**

## TRUSTEE'S DEED UPON SALE

**A.P.N.: 2448-021-024**          Transfer Tax: **$0.00**

THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE, SECTION 480.3

The Grantee Herein **was** the Foreclosing Beneficiary.
The Amount of the Unpaid Debt was **$865,872.24**
The Amount Paid by the Grantee was **$771,000.00**
Said Property is in the City of **Burbank**, County of **Los Angeles**

**Western Progressive Trustee, LLC ,** as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Holders of the GE-WMC Asset-Backed Pass-Through Certificates, Series 2005-1**

TS No.: 2013-03028-CA

# TRUSTEE'S DEED UPON SALE

**Order No.: 1309-CA-791586**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Los Angeles** , State of California, described as follows:

**All That Certain Real Property Situated In The County Of Los Angeles, State Of California Described As Follows:**

**Lot(s) 48 Of Tract No. 11791, In The City Of Burbank, County Of Los Angeles, State Of California, As Per Map Recorded In Book 214, Page(s) 7 to 8 Of Maps, In The Office Of The County Recorder Of Said County.**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by , **Ron Patrick, A Married Man, As His Sole And Separate Property** as Trustor, dated 07/19/2005 of the Official Records in the office of the Recorder of **Los Angeles** , California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust recorded on 07/27/2005 , instrument number **05 1775367** , Book --- , Page --- **and rerecorded on** ---- **as** --- of official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including, among other things, as applicable, the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default or the posting of copies of the Notice of Sale or the publication of a copy thereof.

TS No.: 2013-03028-CA

# TRUSTEE'S DEED UPON SALE

**Order No.: 1309-CA-791586**

At the place fixed in the Notice of Trustee's Sale, said Trustee did sell said property above described at public auction on **06/25/2015** to said Grantee, being the highest bidder at said sale for the amount bid, being **$771,000.00** in lawful money of the United States,, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, Western Progressive Trustee, LLC, as trustee, has this day, caused its name to be hereunto affixed by its duly-authorized agent.

Date: **June 30, 2015**            Western Progressive Trustee, LLC

By: _____            _____
                                    **Keisha Lyons, Trustee Sale Assistant**

STATE OF Georgia
COUNTY OF DeKalb

On June 30, 2015  before me, Chelsea Jackson Personally appeared Keisha Lyons who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Chelsea Jackson            (Seal)

1

# Ron Patrick & Nab- I AM , Pro-se

2

3

745 North Parish Pl

4 Burbank, Ca 91506-1702

5 310 -955-6541

6 (On behalf of )
Richard Weber

7 Department of Internal Revenue Service (IRS)
1111 Constitution  Av  NW

8 Room 2501
Washington  DC 20224

9

10

11

12

13 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF CALIFORNIA

14

15 Ron Patrick & Nab- IAM, PRO-SE,     )Case No.:

16 and (On behalf of  Department of Internal )
Revenue Service, IRS and Department of )

17 Justice (D.O.J)                                    )

18 Plaintiffs                 )

19                                                  )

20 vs.                          )

21                                                  )

22 COUNTY OF LOS ANGELES ,            )
SHERIFF'S DEPARTMENT, LEROY D. )

23 BACA, ALTISOURCE, THE BANK OF   )
NEW YORK MELLON F/K/A THE          )

24 BANK OF NEW YORK , AS TRUSTEE   )
FOR THE HOLDERS OF THE GE-          )

25 WMC ASSET BACKED PASS-             )
THROUGH CERTIFICATES, SERIES       )

26 2005-1,  THE LAW OFFICES OF LES     )
ZIEVE, BRIAN H. TRAN, ESQ. #255577, )

27 LESLIE M. KLOTT, ESQ. # 279622,       )

28

**CIVIL RIGHTS COMPLAINT
AND FRAUD (42 U.S.C
SECTION 1983, 1985**

**COMPLAINT FOR:**
1.  ILLEGAL EVICTION
2.   COMMON LAW FRAUD,
3.   IRS FRAUD, AND
4.   RACKETERING UNDER 18 U.S.C.
     1952.  DEMAND FOR JURY TRIAL
     AND PUNITIVE DAMAGES.

(AMOUNT DEMANDED; 12 MILLION
   US DOLLARS )

1

1   **WMC MORTGAGE CORP,.**
2   **MORTGAGE ELECTRONIC**
    **REGISTRATION SYSTEMS, INC.,**
3   **(MERS), WESTERN PROGRESIVE,**
    **LLC, OCWEN LOAN SERVICING,LLC**
4   **and DOES 1 through 10 inclusive,**

5              **Defendants,**

6

7

8

9   Plaintiffs, Ron Patrick and Nab – I AM, (hereinafter "Plaintiffs") files this Complaint against

10  Defendants,  COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LEROY D. BACA,

11  ALTISOURCE, THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS

12  TRUSTEE FOR THE HOLDERS OF THE GE-WMC ASSSET BACKED PASS-THROUGH

13  CERTIFICATES, SERIES 2005-1, (REFERAL TO AS THE BANK OF NEW YORK MELLON),

14  THE LAW OFFICES OF LES ZIEVE, BRIAN H. TRAN, ESQ: 255577, LESLIE M. KLOTT,

15  ESQ:279622, WMC MORTGAGE CORP., MORTGAGE ELECTRONIC REGISTRATION

16  SYSTEMS, INC. (MERS), WESTERN PROGRESIVE, LLC  AND DOES 1 through 10 inclusive.

17

18                        BRIEF INTRODUCTION OF NATURE OF CASE

19

20          This is a Federal Proceeding and Civil Rights Violations brought by Ron Patrick and Nab- I

21  AM to recovery  property that was stolen from the Plaintiff(s) by all the above defendants conspiring

22  together, fabricating documents and recording them at the Los Angeles County Recorder's office and

23  illegally foreclosing on the property and The Los Angeles County Sheriff Department illegally

24  ejecting Plaintiffs from their domicile by the Powers and Authorities of Ex Los Angeles County

25  Sheriff Leroy D. Baca who is no longer position of office.

26          This Proceeding is also to determine the validity of the documents signed, notarized, recorded

27  and mailed through the use of The United States Postal Service to commit mail fraud.

28          This Proceedings is also to determine if all the California Laws that govern foreclosure was

    followed by the defendants.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| Ron Patrick & Nab l AM | COUNTY OF LOS ANGELESMSHERIF'S DEPARTMENT, LEROY BACA (SEE ATTACHED) |

| **(b) County of Residence of First Listed Plaintiff** Los Angeles | **County of Residence of First Listed Defendant** LOS ANGELES |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| **(c) Attorneys** (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. | **Attorneys** (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. |
|---|---|
| Ron Patrick & Nab l AM<br>754 Parish Pl. Burbank, Ca [91506-1702]<br>626-590-8222 & 310 -955-6541 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding   ☐ 2. Removed from State Court   ☐ 3. Remanded from Appellate Court   ☐ 4. Reinstated or Reopened   ☐ 5. Transferred from Another District (Specify)   ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes  ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $ 21 MILLION DOLLAS

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
440 OTHER CIVIL RIGHTS, FAIR DEBT COLLECTION PRACTICES ACT, AND RICO

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 530 General | ☐ 840 Trademark |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 535 Death Penalty | **SOCIAL SECURITY** |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | **Other:** | ☐ 861 HIA (1395ff) |
| ☐ 450 Commerce/ICC Rates/Etc. | | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 540 Mandamus/Other | ☐ 862 Black Lung (923) |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 864 SSID Title XVI |
| ☐ 480 Consumer Credit | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | ☐ 865 RSI (405 (g)) |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | **FORFEITURE/PENALTY** | **FEDERAL TAX SUITS** |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 891 Agricultural Acts | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **LABOR** | |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☒ 440 Other Civil Rights | ☐ 710 Fair Labor Standards Act | |
| ☐ 895 Freedom of Info. Act | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 896 Arbitration | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 740 Railway Labor Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☒ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment<br>☐ 446 American with Disabilities-Other<br>☐ 448 Education | ☐ 790 Other Labor Litigation<br>☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number:   CV 16 - 02041

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| **QUESTION A:  Was this case removed from state court?**<br>☐ Yes   ☒ No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☒ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| **QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?**<br><br>☐ Yes   ☐ No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right*  ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question B.2. |
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right*  ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| **QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action?**<br><br>☐ Yes   ☐ No<br><br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right*  ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question C.2. |
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right*  ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| **QUESTION D: Location of plaintiffs and defendants?** | **A.**<br>Orange County | **B.**<br>Riverside or San Bernardino County | **C.**<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| **D.1.  Is there at least one answer in Column A?**<br><br>☐ Yes   ☐ No<br><br>If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right.  ➡ | **D.2.  Is there at least one answer in Column B?**<br><br>☐ Yes   ☐ No<br><br>If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below.  ⬇ |
|---|---|

| **QUESTION E: Initial Division?** | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above:  ➡ | |

| **QUESTION F: Northern Counties?** | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?

☒ NO   ☐ YES

If yes, list case number(s): _____

**Civil cases** are related when they (check all that apply):

☐  A. Arise from the same or a closely related transaction, happening, or event;

☐  B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐  C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐  A. Arise from the same or a closely related transaction, happening, or event;

☐  B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐  C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** *Len Patrick b,  /s/ _____*   DATE: *3/28/16*

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |